UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JERMAINE SINGH,

                        Petitioner,          **MEMORANDUM & ORDER**

                 -v-                        08-CV-4450 (SLT)

FLOYD BENNETT, Superintendent,
Elmira Correctional Facility,

ERIC T. SCHNEIDERMAN, New York State
Attorney General,[1]

                     Respondents.
-------------------------------------------------------------x
**TOWNES, United States District Judge:**

      Petitioner Jermaine Singh petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his November 13, 2000 sentence in New York State Supreme Court, Kings County. After two jury trials, Singh was convicted of two counts each of Criminal Possession of Stolen Property in the Third Degree (N.Y. Penal Law § 165.50) and Unauthorized Use of a Vehicle in the Third Degree (N.Y. Penal Law § 165.05). The trial court sentenced petitioner to fifteen years to life imprisonment for each of the stolen property counts and one year for each of the unauthorized use counts. In his petition, Singh argues that sentencing him pursuant to New York's Persistent Felony Offender ("PFO") Statute, P.L. § 70.10, violated his Sixth Amendment right to a jury trial. For the reasons set forth below, the petition is denied.

---

[1] By operation of Rule 25(d) of the Federal Rules of Civil Procedure, Eric T. Schneiderman was automatically substituted for Andrew M. Cuomo as a defendant in this action when Mr. Schneiderman replaced Mr. Cuomo as the Attorney General of the state of New York in November 2010.

1

## I.  BACKGROUND

On March 20, 1999, two police officers observed a gold Lexus ES 300 that had been reported stolen. Petition For Writ of Habeas Corpus ("Pet.") at 3. The Lexus had a license plate that belonged to a white 1994 Acura Legend that had also been reported stolen. *Id.* Thereupon, Petitioner entered the parking lot, driving the stolen Acura. *Id.*; Affidavit in Opposition to Petition for a Writ of Habeas Corpus ("Aff. in Opp.") at 2. The officers pursued Petitioner in a chase that ended back at the same parking lot. Aff. in Opp. at 2. During the chase, the Acura hit several vehicles, including a police vehicle. Pet. at 3. The Acura cashed into a parked car and Petitioner, along with two passengers, fled on foot. *Id.* Petitioner and one of the other passengers got into another car, a BMW, and attempted to flee. *Id.* The officers fired multiple shots at the vehicle, causing it to crash into a tree. *Id.*; Aff. in Opp. at 2-3. Petitioner was then arrested. *Id.*

After a first trial, "the jury acquitted Petitioner of three counts of Attempted Aggravated Assault Upon a Police Officer, one count of Reckless Endangerment in the First Degree, and one count each of Criminal Possession of Stolen Property in the Third Degree and Unauthorized Use of a Vehicle in the Third Degree as to the Lexus." Aff. in Opp. at 3. The jury found Petitioner guilty of Unauthorized Use of a Vehicle in the Third Degree with respect to the BMW. *Id.* The jury did not reach a verdict on the Unauthorized Use count with respect to the Acura, and the Possession of Stolen Property counts as to the Acura and BMW. Pet. at 4. "After a second trial, the jury convicted Petitioner of two counts of Criminal Possession of Stolen Property in the Third Degree and one count of Unauthorized Use of a Vehicle in the Third Degree." *Id.*

Petitioner had three prior felony convictions for Criminal Possession of Stolen Property in the Fourth Degree which were introduced into evidence at the November 13, 2000 sentencing

hearing via certificates of disposition. Sentence Hearing Transcript ("Tr.") at 3-5. The People also introduced fingerprint comparisons from the State Division of Criminal Justice and the minutes of a plea where Petitioner admitted a prior felony conviction and was adjudicated as a second felony offender. *Id.* at 5-7, 9-10. The court noted that there were two issues that needed to be decided: "whether or not [Singh] qualifies for a sentence as a persistent felony offender, and the second question is whether [the court] should impose it." *Id.* at 18. As to the first question, the court stated that "[w]ith regard to the defendant's prior conviction[s], I find...that the defendant does qualify for sentencing as a persistent felony offender based upon his prior convictions and sentences as indicated...." *Id.* at 25. The court continued to the second question, and stated:

> With regard to whether or not the defendant should be sentenced as a persistent felony offender, although [Defendant's attorney] is correct, that none of his crimes are characterized as crimes of violence and can be confined to the category of property crimes, it's clear from the defendant's record and the evidence in this case that the defendant has to be characterized as what is known as a compulsive copy. He has stolen cars throughout his history; he has stolen cars after being sent to jail for stolen cars, placed on parole for stolen cars.

*Id.* at 25-26. Finally, the court concluded that "[b]ased on the nature of the defendant's crimes and in the interest of society, [the court will sentence] the defendant as a persistent felony offender." *Id.* at 26. The court sentenced Petitioner to fifteen years to life imprisonment on each of the felony convictions of Criminal Possession of Stolen Property in the Third Degree. Pet. at 5. The court also sentenced Petitioner to one year on the misdemeanors of Unauthorized Use of a Vehicle. *Id.*

On February 13, 2004, Petitioner filed a motion to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20. *Id.* Petitioner argued that the PFO statute was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of

3

a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt"). *Id.* In a decision and order dated June 18, 2004 the Kings County Supreme Court rejected that argument and denied the motion. *People v. Singh*, No. 2475/99, 787 N.Y.S.2d 680 (Sup. Ct. Kings June 18, 2004). Petitioner sought leave to appeal to the Appellate Division of the Supreme Court of the State of New York, Second Department, but leave was denied on September 8, 2004. Pet. at 6.

On direct appeal, Petitioner raised, *inter alia*, his Sixth Amendment violation argument. *Id.* In a decision and order dated December 12, 2006, the Appellate Division affirmed Petitioner's conviction and found that the Sixth Amendment issue was "unpreserved for appellate review and, in any event, [was] without merit." *Id.*; *People v. Singh*, 825 N.Y.S.2d. 764, 765 (2d Dep't 2006). The New York Court of Appeals denied leave to appeal on August 8, 2007. *People v. Singh*, 842 N.Y.S.2d 793 (2007).

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A]n 'adjudication on the merits' is a substantive, rather than procedural, resolution of a federal claim...." *See Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citations omitted). A state court has adjudicated a state petitioner's claim on the merits when it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan*, 261 F.3d 303 at 312).

In order for a law to be "clearly established" pursuant to § 2254(d), "a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent." *Portalatin v. Graham*, 624 F.3d 69, 79 (2d Cir. 2010), *cert. denied* --- U.S. ---, 131 S.Ct. 1693, 179 L.Ed.2d 646 (2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Further, "for a state court decision to be 'contrary to,' or an 'unreasonable application of,' that Supreme Court precedent, the decision must: (1) 'arrive[] at a conclusion opposite to that reached by [the Supreme Court] on a question of law'; (2) 'decide[] a case differently than [the Supreme Court] on a set of materially indistinguishable facts'; or (3) 'identif[y] the correct governing legal principle...but unreasonably appl[y] that principle to the facts of the prisoner's case.'" *Id.* (citing *Williams*, 529 U.S. at 412-13). The Second Circuit has ruled that, in deciding whether to grant habeas relief, the court decides "not whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time." *Policano v. Herbert*, 507 F.3d 111, 115 (2d Cir. 2007) (citing *Brown v. Greiner*, 409 F.3d 523, 533 (2d Cir. 2005)).

**B.   Sentencing pursuant to N.Y. Persistent Felony Offender Statute, P.L. § 70.10**

In support of Petitioner's *Apprendi* challenge, he argues that the PFO sentencing scheme allows the court to increase the upper limit of the sentence "based upon facts found by the court,

rather than a jury" in violation of the Sixth Amendment. Pet. at 6. Specifically, Petitioner takes issue with the second step of the persistent felony offender application. The two step process is articulated by New York Penal Law § 70.10, which "permits the court to impose the enhanced sentence 'in lieu of' the lesser sentence only when it has 'found...that a person is a persistent felony offender *and* when it is the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest[.]' (Emphasis added). Further, '[s]uch sentence may not be imposed' unless and until the court makes both of those findings." Pet. at 9 (internal citation omitted) (citing New York Penal Law § 70.10(2); New York Criminal Procedure Law § 400.20(1)). However, the Court in *Portalatin* recently rejected *Apprendi* challenges to sentencing pursuant to the New York Persistent Felony Offender Statute and determined that the statute does not violate Sixth Amendment rights. *Portalatin*, 624 F.3d at 88-94. The Second Circuit, in *Portalatin*, dismissed all of Petitioner's arguments.

*Portalatin* addresses the three New York Court of Appeals' cases which have interpreted the PFO statute after the Supreme Court's decision in *Apprendi*, stressing that each one affirmed the statute's constitutionality in the face of Sixth Amendment challenges. *Portalatin*, 624 F.3d at 84 (citing *People v. Quinones*, 12 N.Y.3d 116, 131 (2009); *People v. Rivera*, 5 N.Y.3d 61, 71 (2005); *People v. Rosen*, 96 N.Y.2d 329, 336 (2001)). While federal courts "do not defer to [the New York Court of Appeals'] interpretation of *federal* law...we are bound by its construction of *New York* law in conducting our analysis." *Id.* (emphasis in original). The *Portalatin* court then considered New York's construction of the PFO statute.

In *Rosen*, the court acknowledged the *Apprendi* court's ruling that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

6

statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Rosen*, 96 N.Y.2d at 334 (quoting *Apprendi*, 530 U.S. at 490). Additionally, the *Portalatin* court noted that the exception in *Apprendi* for prior convictions "preserved the Court's earlier holding in *Almendarez-Torres v. United States*, which affirmed the constitionality of the use of recidivism as a judicially determined sentencing factor authorizing an enhanced sentence." *Portalatin*, 624 F.3d at 83 (internal quotations omitted); *see Almendarez-Torrez v. United States*, 523 U.S. 224, 247 (1998). The *Rosen* court rejected the argument that the PFO violated those holdings:

> [T]he [*Rosen*] court went on to hold that the only "fact" necessary to impose a PFO sentence under § 70.10 is the "fact" of recidivism, placing the PFO statute squarely within the exception to the rule: "It is clear from the…statutory framework that the prior felony convictions are the *sole determin[ant]* of whether a defendant is subject to enhanced sentencing as a persistent felony offender." Only after that finding is made will a court look to the defendant's "history and character," and the "nature and circumstances of his criminal conduct," to determine where, within this now expanded sentencing range, a sentence *should* be imposed. To that end, "the sentencing court is thus only fulfilling its traditional role – giving due consideration to agreed-upon factors – in determining an appropriate sentence within the permissible statutory range."

*Portalatin*, 624 F.3d at 84-85 (citing *Rosen*, 96 N.Y.2d at 335) (internal citations omitted) (emphasis in original).

In *Rivera*, the New York Court of Appeals revisited the PFO in light of two Supreme Court cases: *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (striking down an Arizona sentencing structure where the death penalty was authorized only when the judge determined certain aggravating factors were present, because the factors were the "functional equivalent of an element of a greater offense") and *Blakely v. Washington*, 542 U.S. 296, 299 (2000) (holding a sentencing scheme unconstitutional where there was one sentencing range based on the jury's verdict, and an increased sentencing range if the judge determined there was "substantial and compelling reasons justifying an exceptional sentence."). Petitioner argues that *Blakely* is "fatal

to the holdings of *Rosen* and *Rivera*." Pet. at 8. However, the *Rivera* court distinguished *Ring* and *Blakely* by determining that, under the PFO, the judge does not use additional factors to expand the sentencing range, but rather, the prior felonies "are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism." *Rivera*, 5 N.Y.3d at 68. The *Rivera* court added, "that is why we pointedly called the predicate felonies the 'sole' determinant." *Id.* The *Rivera* court wrote that the statute would only pose an *Apprendi* problem if the evaluation of the defendant's character and history came "*before* he became eligible for a persistent felony offender sentence." *Id.* at 67 (emphasis in original). The Second Circuit, in discussing *Rivera*, described the two step test for the PFO statute, saying "the court in *Rivera* clearly constructed state law to provide for an expanded range of authorized sentences once a defendant is adjudged a persistent felony offender, at which point the trial judge is directed to exercise discretion in determining where within that *newly expanded range* to impose a sentence...." *Portalatin*, 624 F.3d at 85 (emphasis added).

*Rivera* also addressed the requirement that the judge articulate the factors that were relevant to determining what sentence to impose. *Rivera*, 5 N.Y.3d at 69. The court wrote that this requirement is in place to provide the defendant with an opportunity to respond to those factors that the Judge is considering and to "facilitate[] an appellate review function that is distinct from the issue of whether the PFO sentence was lawfully imposed." *Portalatin*, 624 F.3d at 86 (referring to the New York intermediate appellate courts' "authority to review and modify criminal sentences in the interests of justice.").

In *Quinones*, again the court determined that the New York PFO was not in violation of constitutional rights because the PFO determination and automatic expansion of the sentencing range are based on prior convictions, acceptable under *Apprendi*, and all that follows in step two

is the court's usual discretionary task within the newly expanded range. Petitioner notes that the second step of the PFO determination can be based on "any relevant evidence...regardless of the admissibility under the exclusionary rules of evidence, and the standard of proof...[is] a preponderance of the evidence." Pet. at 11 (citing New York Criminal Procedure Law § 400.20(5)). However, the second step does not require proof beyond a reasonable doubt, because it is merely an exercise of the court's discretion:

> The New York sentencing scheme, *after a defendant is deemed eligible to be sentenced as a persistent felony offender*, requires that the sentencing court make a qualitative judgment about, among other things, the defendant's criminal history and the circumstances surrounding a particular offense in order to determine whether an enhanced sentence...is warranted. [This]...sets the parameters for the performance of one of the sentencing court's most traditional and basic functions, i.e., the exercise of sentencing discretion.

*Quinones*, 12 N.Y.3d at 130 (emphasis added).

The petitioners in *Portalatin* made materially indistinguishable arguments from those the Petitioner makes in the instant case. The petitioners in *Portalatin* argued "that the step two determination under the PFO statute violates the Sixth Amendment because a sentencing judge is required to make factual findings beyond those respecting the predicate felony convictions before imposing a class A-I sentence." *Portalatin* 624 F.3d at 88. They also argued:

> [N]otwithstanding the Court of Appeals' authoritative construction in *Rivera* – the PFO statute continues to require unconstitutional factfinding, because even assuming the predicate felony convictions are sufficient to authorize a PFO sentence, the mere *fact* of those convictions does not suffice. Instead, a sentencing judge must form an opinion about the *nature* of those convictions before imposing a PFO sentence, an endeavor that necessarily entails factfinding beyond the scope of *Almendarez-Torres*. That is, a court is required to consider subsidiary facts and surrounding circumstances of those convictions to arrive at a conclusion whether "extended incarceration and life-time supervision will best serve the public interest."

*Id.* at 92 (citing N.Y. Penal Law § 70.10). The Second Circuit rejected these arguments, and in so doing clearly rejected Petitioner's arguments that his sentence was imposed in violation of his constitutional rights. The *Portalatin* court held:

> [B]ecause the New York Court of Appeals has interpreted step two of the PFO sentencing scheme as a procedural requirement that informs only the sentencing court's discretion, the New York courts were not unreasonable to conclude that this consideration is unlike the factfinding requirements invalidated [by the Supreme Court]. Here, under the New York Court of Appeals' construction, the *Apprendi* maximum for each petitioner was fixed at that of a class A-I felony once the recidivism findings were established....Under *Rivera*, any facts that the sentencing judge considered beyond those respecting recidivism do not implicate the Sixth Amendment, for they did not – and could not – lead to a sentence in excess of that *Apprendi* maximum.

*Portalatin*, 624 F.3d at 91 (internal citations omitted). Further, as to the second argument, the Second Circuit assumed, without deciding, that the PFO statute required the judge to consider "subsidiary facts respecting a defendant's criminal history before imposing a PFO sentence," but held that even if that were true, it does not constitute unconstitutional factfinding. *Id.* at 92. "...[P]etitioners urge that the *Almendarez-Torres* exception to the rule of *Apprendi* should be read narrowly...to forbid a sentencing judge from forming an opinion about a defendant's criminal history, based on facts underlying those prior convictions, before imposing a recidivism sentence. Yet there is no clear holding of the Supreme Court to command such a result. 'Given the lack of holdings from th[e] [Supreme Court]' construing the recidivism exception as narrowly as petitioners urge, 'it cannot be said that the state court unreasonably applied clearly established federal law.' *Id.* (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Petitioner also cited *Cunningham v. California*, 549 U.S. 270 (2007) to support his argument that the Supreme Court has "struck down the type of judicial fact-finding at issue in

New York State's discretionary persistent felon statute."[2] Pet. at 8. However, the Second Circuit dismissed this argument. "In *Cunningham*, a defendant found guilty of continuous sexual abuse of a child was entitled to a sentence of twelve years, but for an additional finding of 'circumstances in aggravation.' In contrast, the PFO statute – as interpreted by the New York Court of Appeals – creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history." *Portalatin*, 624 F.3d at 93-94 (citing *Cunningham*, 549 U.S. at 277). The *Portalatin* court further noted that "[u]nlike in *Blakely* and *Cunningham*, recidivism findings are the touchstone: the predicate felonies alone expand the indeterminate sentencing range within which the judge has the discretion to operate...." *Id.* at 94.

It is clear from the transcript of Petitioner's sentencing that the sentencing judge considered first whether Petitioner qualified for the expanded sentencing range, and *then* evaluated various factors to inform his sentencing decision within the limitations of the newly expanded range. *See* Tr. at 18 ("there are two things I have to decide: One is whether or not [Petitioner] qualifies for sentence as a persistent felony offender, and the second question is whether I should impose it"); Tr. at 25 ("With regard to the defendant's prior conviction[s], I find...that the defendant does qualify for sentencing as a persistent felony offender"). Only after determining that Petitioner qualified for the expanded sentencing range did the sentencing judge consider underlying facts of the case and that Petitioner "has stolen cars throughout his [criminal] history." *See* Tr. at 26. The sentencing judge did not make the fatal mistake, described in the *Rivera* opinion, of evaluating Petitioner's character and history "*before* he

---

[2]Additionally, Petitioner relied on *Portalatin v. Graham*, 478 F. Supp. 2d 385, 394 (E.D.N.Y. 2007), and later, *Besser v. Walsh*, 601 F.3d 163 (2d Cir. 2010), both of which held that the PFO statute was unconstitutional. However the Second Circuit reversed the *Portalatin* district court and vacated the decision in *Besser* with its decision in *Portalatin v. Graham*, 624 F.3d 69 (2d Cir. 2010).

11

became eligible for a persistent felony offender sentence." *Rivera*, 5 N.Y.3d at 67. The state court was not unreasonable in rejecting Petitioner's arguments that his Sixth Amendment rights were violated. As Petitioner's sentencing was not contrary to clearly established federal law, his petition for habeas relief is denied.

## III. CONCLUSION

For the foregoing reasons, Petitioner's sentence imposed pursuant to the N.Y. Persistent Felony Offender Statute, P.L. § 70.10, did not violate Petitioner's Sixth Amendment rights to trial by jury. Accordingly, the petition for the writ of habeas corpus is denied. The Court declines to issue a certificate of appealability because the petitioner has not made a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

s/ SLT

/SANDRA L. TOWNES
United States District Judge

Dated: November 14, 2011
Brooklyn, New York